# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| GEORGE V. HILL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-681 (RBW) |
| | ) | |
| J. PATRICIA WILSON SMOOT *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The plaintiff, appearing *pro se*, has sued the Chairperson of the United States Parole Commission ("USPC"), J. Patricia Smoot, and two employees of the Court Services and Offender Supervision Agency ("CSOSA"), Maria T. Cecala and Akil Walker, for alleged improper disclosures of his personal information and the wrongful use of such information. *See* Complaint ("Compl.") at 1, ECF No. 1. The plaintiff seeks a total of $200,000 in monetary damages. *See id.* at 2. The defendants have moved to dismiss this case under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief may be granted. *See* Motion to Dismiss ("Defs.' Mot."), ECF No. 8. The plaintiff has filed an opposition, ECF No. 11, and the defendants have filed a reply to the opposition, ECF No. 12. Upon consideration of the parties' submissions, and for the reasons explained below, the defendants' motion will be granted.

### I. BACKGROUND

Although CSOSA is established "within the executive branch of the Federal Government," D.C. Code § 24-133(a) (2001), CSOSA supervises "offenders on probation,

1

parole, and supervised release pursuant to the District of Columbia Official Code," D.C. Code § 24-133(c)(1) (2016). CSOSA's "supervision officers . . . have and exercise the same powers and authority as are granted by law to United States Probation and Pretrial Officers." *Id*. § 24-133(d). This action stems from CSOSA's supervision of the plaintiff, who alleges the following.[1]

On "more than one occasion" between October 2015 and March 2016, Cecala, whom the plaintiff identifies in the caption of the complaint as a Community Supervision Officer ("CSO") for CSOSA, "knowingly and willingly" released information "from the plaintiff's personal and confidential file maintained by [ ]CSOSA[ ] without authorization to known and unknown individuals." Compl. at 1. According to the plaintiff, Cecala (hereafter "CSO Cecala"): (1) "used her office to obtain unverified and misleading unsubstantiated information from [his] former mental health provider (Crawford Consultants), that was wrongfully used against [his] parole status"; (2) "divulged misleading and unsubstantiated information to [his] former mental health care providers' nurse Barney Dank without authorization"; and (3) gave unauthorized and unsubstantiated information to a pretrial services agent attorney, without authorization[.]" *Id*. The "unverified information obtained by . . . [CSO] Cecala was used along with the arrest information to write a violation report to the USPC, which led to a warrant for [the plaintiff's] arrest" and his "commitment to DC jail for approximately one [ ] month of incarceration." Plaintiff's Response to Defendant's Motion to Dismiss Under the Local Rule of the Court at 2 ("Pl.'s Opp'n"), ECF No. 11. The plaintiff also alleges that in March 2016, CSO Cecala "divulge[d] information to an attorney representing [him] in the arrest case." *Id*.

---

[1] Consistent with *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), the Court has read and considered "all of the [*pro se*] filings together" to complete the factual background.

2

As a result of CSO Cecala's alleged conduct, the plaintiff concludes that while acting "under color of law of her office," CSO Cecala violated his "right to privacy, without authorization, and without consideration for plaintiff's equal protection, or civil rights to due process." Compl. at 1. He also accuses CSO Cecala "of a HIPPA violation." *Id*.

The plaintiff faults CSO Cecala's supervisor, Akil Walker, for allegedly failing "to take appropriate action or give proper review under agency regulation to investigate plaintiff's complaint after being notified on two or more occasions of agency regulations violations by his [subordinate] Maria T. Cecala." *Id*. at 2. The plaintiff also faults Chairperson Smoot for allegedly failing "to respond or take any action or make official review of plaintiff's complaint of agency regulations violations" by CSO Cecala and Walker, whom the plaintiff mistakenly describes as "agents of the USPC." *Id*. *See* Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss ("Defs.' Mem.") at 10 n.4 (noting that "the USPC and CSOSA are separate agencies, and Chairman Smoot is not a superior of either Cecala or Walker"); *see also* D.C. Code § 23-133(b) (creating within CSOSA "a Director appointed by the President, by and with the advice and consent of the Senate, for a term of six years").

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(1)

A motion for dismissal under 12(b)(1) "presents a threshold challenge to the court's jurisdiction . . . ." *Haase v. Sessions*, 835 F.2d 902, 906 (D.C. Cir. 1987); *see also Grand Lodge Fraternal Order of Police v. Ashcroft*, 185 F. Supp. 2d 9, 13 (D.D.C. 2001) (noting that "a Rule 12(b)(1) motion imposes on the court an affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority"). Accordingly, the Court must dismiss a claim if the Court "lack[s] . . . subject matter jurisdiction [.]" Fed. R. Civ. P. 12(b)(1). Under Rule 12(b)(1),

"it is to be presumed that a cause lies outside [a federal court's] limited jurisdiction," *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994), and the plaintiff bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence, *see, e.g., Moore v. Bush*, 535 F. Supp. 2d 46, 47 (D.D.C. 2008). In deciding a motion to dismiss based upon lack of subject-matter jurisdiction, a Court is not limited to the allegations set forth in the complaint, but "may consider materials outside the pleadings . . . ." *Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005). And when reviewing a motion to dismiss pursuant to Rule 12(b)(1), the Court is required to accept as true all factual allegations contained in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 164 (1993).

**B. Motion to Dismiss Under Rule 12(b)(6)**

A motion to dismiss under Rule 12(b)(6) tests whether the complaint properly "state[s] a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Rule 8(a) requires only that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "detailed factual allegations" are not required, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), a plaintiff must provide "more than an unadorned, the defendant-unlawfully-harmed-me accusation," *id*. Rather, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw [a] reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). However, a complaint alleging "facts that are

'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

"In evaluating a Rule 12(b)(6) motion, the Court must construe the complaint 'in favor of the plaintiff, who must be granted the benefit of all inferences that can be derived from the facts alleged.'" *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979)). However, conclusory allegations are not entitled to an assumption of truth, and even those allegations pleaded with factual support need only be accepted insofar as "they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

## C. *Pro Se* Filings

In applying the framework above, the Court must be mindful of the fact that the plaintiff is proceeding in this matter *pro se*. This appreciation is required because the pleadings of *pro se* parties are "to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citations omitted). Furthermore, all factual allegations by a *pro se* litigant, whether contained in the complaint or other filings in the matter, should be read together in considering whether to grant a motion to dismiss. *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999). Nonetheless, a "*pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C. Cir. 1981).

### III. ANALYSIS

The defendants contend that they are "left to speculate as to the legal basis" of the plaintiff's claims, and they offer various possibilities. Defs.' Mem. at 4. But, the plaintiff has

invoked in his complaint the due process and equal protection clauses of the Constitution and the Health Insurance Portability and Accountability Act ("HIPAA"), *see* 42 U.S.C. § 1320d–6 (2010). *See* Compl. at 1. However, neither claim can survive the instant motion to dismiss.[2]

## A. Sovereign Immunity

Sovereign immunity implicates the court's subject matter jurisdiction. Thus, "[i]t is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction." *United States v. Mitchell*, 463 U.S. 206, 212 (1983). Such consent may not be implied, but must be "unequivocally expressed." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992). In this case, because all of the named defendants are federal officials being sued as a result of the performance of their official duties, "the only possible basis for subject matter jurisdiction" over the plaintiff's claims against the named individuals in their official capacities "would be the . . . FTCA." *Johnson v. Fenty*, No.

---

[2] In his opposition, the plaintiff adds "negligence by the defendants in their official, and individual capacity, while acting under color of law." Plaintiff's Response to Defendant's Motion to Dismiss Under the Local Rule of the Court at 1 ("Pl.'s Opp'n"), ECF No. 11. The Federal Tort Claims Act ("FTCA") waives the United States' immunity as to certain enumerated claims for money damages, including negligence. 28 U.S.C. §§ 1346(b), 2671-80, But in order for this Court to exercise jurisdiction over an FTCA claim, the plaintiff must first exhaust his administrative remedies under the FTCA by presenting the claim "to the appropriate Federal agency" and obtaining a final written denial, or allowing six months to elapse without a final disposition. *Id.* § 2675(a). *See Simpkins v. District of Columbia Gov't*, 108 F.3d 366, 371 (D.C. Cir. 2007) (finding FTCA's exhaustion requirement to be "jurisdictional"); *Abdurrahman v. Engstrom*, 168 F.App'x 445, 445 (D.C. Cir. 2005) (per curiam) (affirming district court's dismissal of unexhausted FTCA claim "for lack of subject matter jurisdiction"). The defendants have provided a declaration from CSOSA's Office of General Counsel stating that it has no record of "an FTCA claim relating to any incident filed by Plaintiff George V. Hill." Declaration of Marigold Henderson ¶ 4, ECF No. 8-1. In his opposition, the plaintiff has pointed to exhibits three and four as evidence that he "did [exhaust] his administrative remedies." Pl.'s Opp'n at 2. But those exhibits show nothing of the kind. The exhibits are not addressed to the Office of General Counsel, which "is the entity within CSOSA responsible for processing FTCA claims relating to CSOSA staff[,]" Henderson Decl. ¶ 3, and they do not present a claim to the agency for any money damages, let alone for a sum certain. Therefore, to the extent that the Court must consider the plaintiff's negligence claim, *see Richardson*, 193 F.3d at 548, the claim is dismissed without prejudice.

10-5105, 2010 WL 4340344, at *1 (D.C. Cir. Oct. 1, 2010) (referring to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-80); *see* Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss at 2 (noting the previous "certification," pursuant to 28 U.S.C. § 2679(d), "that Maria T. Cecala and Akil Walker were acting within the scope of their employment with respect to the [same] allegations stated against them by Hill") (citing *Hill v. Cecala*, No. 16-cv-0659 (CKK), ECF No. 1-2)); *see also* Defs.' Mem. at 1 n.1 (observing that the instant complaint "is virtually identical" to the plaintiff's previous complaint removed from the Superior Court of the District of Columbia).

      The United States has not waived its sovereign immunity for constitutional tort claims, *see Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 477 (1994) (stating that sovereign immunity precludes damage claims against the United States government for constitutional violations brought under the FTCA), and the United States' immunity extends to federal agencies and to federal employees sued in their official capacities, *see id*. at 483-86; *see also Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (A suit against a government official in her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent," such that "an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citations omitted)). Consequently, the Court concludes that it lacks subject matter jurisdiction over the claims against Chairperson Smoot, CSO Cecala and Supervisory CSO Walker in their official capacities, *see accord Cooper v. Johnson*, 652 F. Supp. 2d 33, 39 (D.D.C. 2009), and it dismisses the constitutional claims filed against them in their official capacities under Rule 12(b)(1).

**B. Failure to State a Claim**

    **1. Constitutional Violations against the Individual Defendants**

Although the plaintiff has not identified the source of his constitutional claims beyond the Constitution itself, the Supreme Court has recognized in limited circumstances "an implied private action for damages against federal officers [in their individual capacity] alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001) (discussing *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971)). But the plaintiff's "allegations that government officials disseminated information that harmed [him] find an alternative remedy in the Privacy Act," which "regulate[s] the collection, maintenance, use, and dissemination of information by [Federal] agencies." *Liff v. Office of Inspector Gen. for U.S. Dep't of Labor*, 881 F.3d 912, 922 (D.C. Cir. 2018) (citations omitted; alterations in original). This Circuit has explained: "The Privacy Act represents Congress's legislative judgment about the appropriate remedies with respect to the accuracy, fairness, and use of government information, and the judicial system is not in a position to revise that scheme by recognizing an additional constitutional remedy for that kind of claim." *Id*. at 924. Therefore, the Privacy Act "inhibits the availability of a *Bivens* remedy" for the alleged misconduct forming the basis of this action, *id*., which, in turn, renders consideration of CSO Cecala's qualified immunity defense, *see* Defs.' Mem. at 9-10, unnecessary. *See Liff*, 881 F.3d at 924 ("Because we have determined that Liff has no viable *Bivens* action . . . , we need not consider their qualified-immunity defenses.") (citation omitted)); *see also Armstrong v. Bureau of Prisons*, 976 F. Supp. 17, 23 (D.D.C. 1997) (holding that only executive-branch agencies are subject to suit under the Privacy Act).

## 2. The Privacy Act

As applicable to the allegations in the instant complaint, the Privacy Act prohibits a federal agency from disclosing "any record . . . contained in a system of records by any means of communication to any person" without the subject's permission, save certain exceptions. *Hurt v. D.C. Court Servs. & Offender Supervision Agency*, 827 F. Supp. 2d 16, 20 (D.D.C. 2011) (quoting 5 U.S.C. § 552a(b)). An individual who has suffered injury from an improper disclosure may recover monetary damages under 5 U.S.C. § 552a(g)(1)(D), if he can show that "'the agency acted in a manner which was intentional or willful[.]'" *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1122 (D.C. Cir. 2007) (quoting 5 U.S.C. § 552a(g)(4)). The Circuit has interpreted "§ 552a(g)(1)(D) to permit claims predicated on § 552a(b) violations only by a person whose records are actually disclosed." *Id*. at 1123. Further, the records must be "about" that person and "retrieved by his name." *Id*. (emphasis omitted).

Although the plaintiff has not invoked the Privacy Act in his complaint, the defendants argue that no such claim can survive a motion to dismiss because (1) the plaintiff is still in custody and therefore required to apply for habeas corpus relief, and (2) the plaintiff has not "identif[ied] or describe[d] the documents that he alleges were illegally disclosed and . . . allege[d] that any such documents were part of a record contained within a system of records."[3]

---

[3] In their reply, the defendants change course and raise a jurisdictional argument that CSOSA is not subject to the Privacy Act because it "is a unit of the court." Defendants' Reply to Plaintiff's Response to Defendants' Motion to Dismiss at 3-4, ECF No. 12. This argument is unfounded. Although the Privacy Act "specifically excludes the courts of the United States from the definition of "agency[,]" *Callwood v. Dep't of Prob. of the Virgin Islands*, 982 F. Supp. 341, 343 (D.V.I. 1997) (citing 5 U.S.C. § 551(1)(B)), CSOSA, by its enacting language, is not a Probation Department within the federal judiciary; it is an "executive branch" agency. D.C. Code § 24-133(a); *see Johnson v. Williams*, 699 F. Supp. 2d 159, 166 (D.D.C. 2010), *aff'd sub nom. Johnson v. Fenty*, No. 10-5105, 2010 WL 4340344 (D.C. Cir. Oct. 1, 2010) ("Because the suit against the defendants in their official capacities is treated as if it were brought against CSOSA directly, and because CSOSA is a federal government agency, § 1983 does not apply . . .
(continued . . .)

Defs.' Mem. at 6.  Since the disposition of this case is without prejudice, the door remains open for the plaintiff to plead anew.  Therefore, the Court will address the defendants' arguments.

The defendants' first argument is based on nothing more than an assumption that the plaintiff remains in custody.[4]  *See id*. at 7.  However, the plaintiff's address of record is a residence in the District of Columbia, and he has countered that "he is no longer incarcerated, or on parole, and cannot use the writ of habeas corpus as a remedy."[5]  Pl.'s Opp'n at 2.  Even if the plaintiff was in custody when he filed this action, the defendants are only partially correct.

In *Heck v. Humphrey*, 512 U.S. 477 (1994), the Supreme Court held:

> [I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ for habeas corpus.

*Id*., 512 U.S. at 486-87; *see also Skinner v. U.S. Dep't of Justice & Bureau of Prisons*, 584 F.3d 1093, 1101 (D.C. Cir. 2009) (affirming "dismissal of Skinner's damages claim [under the Privacy Act] because such a claim is not cognizable unless Skinner first secures relief through a

---

(. . . continued)
[and] sovereign immunity bars the plaintiff's claims for damages against [the] defendants in their official capacities.").  *Epps v. U.S. Attorney General*, 575 F. Supp. 2d 232, 234 n.1 (D.D.C. 2008) (noting that CSOSA is a federal agency).

[4]  "The ultimate objective of a habeas petition is release from custody."  *Almurbati v. Bush*, 366 F. Supp. 2d 72, 78 (D.D.C. 2005).  "To meet the 'in custody' requirement, a petitioner must have been in custody at the time the habeas petition was filed."  *Banks v. Gonzales*, 496 F. Supp. 2d 146, 149 (D.D.C. 2007) (citations omitted).  A District of Columbia offender "is deemed 'in custody' so long as he remains on supervised release."  *Rahim v. U.S. Parole Comm'n*, 77 F. Supp. 3d 140, 143 (D.D.C. 2015) (citing cases).

[5]  "A petition for a writ of *coram nobis* provides a way to collaterally attack a criminal conviction for a person . . . who is no longer 'in custody' and therefore cannot seek habeas relief under 28 U.S.C. § 2255 or § 2241."  *United States v. Newman*, 805 F.3d 1143, 1146 (D.C. Cir. 2015) (quoting *Chaidez v. U.S*., 568 U.S. 342, 345 n. 1 (2013)).  But, nothing in the record suggests that the plaintiff has pursued the *coram nobis* remedy.

writ of habeas corpus"). "Thus, absent a showing that the plaintiff's conviction or sentence has been invalidated, or in this case, that his parole violator term has been invalidated, . . , the plaintiff cannot recover damages" for the alleged one-month he spent in custody following his arrest for a parole violation. *Johnson v. United States*, 590 F. Supp. 2d 101, 108-09 (D.D.C. 2008).

That said, the Circuit has "read" *Heck* and its progeny "to require that a . . . prisoner's . . . claim must first be brought in habeas *only when*, if successful, it would 'necessarily imply,' or automatically result in, a speedier release from prison." *Anyanwutaku v. Moore*, 151 F.3d 1053, 1056 (D.C. Cir. 1998) (emphasis added). Not all of the alleged disclosures fit the bill. Apart from the information the plaintiff alleges "was used" to support his arrest for a parole violation, the plaintiff alleges that CSO Cecala "on more than one occasion did divulge information maintained in [his] file by CSOSA," Pl.'s Opp'n at 2, to a nurse practitioner who the plaintiff "was seeing as [his] therapist," *id* at 1. The defendants have not suggested a direct link between those alleged disclosures and the fact or duration of the challenged custody, nor is one apparent from the complaint's allegations. *Cf. Anyanwutaku*, 151 F.3d at 1056 (finding *Heck* inapplicable to claim where success in the district court "would have earned nothing more than a 'ticket to get in the door of the parole board' ") (quoting *Neal v. Shimoda*, 131 F.3d 818, 824 (9th Cir. 1997)). Therefore, for present purposes, the Court finds no barrier under *Heck* to the claim predicated on CSO Cecala's alleged disclosures to the nurse.

As noted above, the defendants argue that the plaintiff has not identified a specific record allegedly disclosed and alleged that it was contained in a system of records. Defs.' Mem. at 6. The definition of a record under the Privacy Act "is undeniably expansive" to encompass "any item, collection, or grouping of information about an individual." *Scarborough v. Harvey*, 493

11

F. Supp. 2d 1, 15 (D.D.C. 2007) (quoting 5 U.S.C. § 552a(a)(4) (parenthesis and internal quotation marks omitted))). The plaintiff alleges that Cecala "told" the nurse practitioner "that the plaintiff had been arrested for selling drugs and using drugs and was in jail," and that the information came from his CSOSA file. Pl.'s Opp'n at 1-2. The Circuit "has expressly declined to adopt the proposition 'that when a release consists merely of information to which the general public already has access . . . the Privacy Act is not violated.'" *Scarborough*, 493 F. Supp. 2d at 16 n.29 (quoting *Pilon v. U.S. Dep't of Justice*, 73 F.3d 1111, 1118 (D.C. Cir. 1996)). Therefore, the Court finds that the plaintiff has at most pleaded facts "consistent with" an improper disclosure, but that "stops short of the line between possibility and plausibility of entitlement to relief" under the Privacy Act. *Twombly*, 550 U.S. at 557 (internal quotation marks and alteration omitted). Furthermore, the plaintiff has alleged no injury apart from his one-month incarceration, which, as concluded above, cannot yet support a claim. And a "vague description of the harms allegedly sustained as a result of [an agency's] disclosure cannot support a demand for actual damages that must be 'limited to proven pecuniary or economic harm.'" *Glass v. U.S. Dep't of Justice*, 279 F. Supp. 3d 279 (D.D.C. 2017) (quoting *FAA v. Cooper*, 566 U.S. 284, 299 (2012) (emphasis omitted)). Accordingly, the Court agrees with the defendants that any Privacy Act claim is subject to dismissal under Rule 12(b)(6).

   **3. HIPAA Violation**

The defendants argue that the plaintiff's claim under the HIPAA fails as a matter of law because no private right of action exists under the Act. *See* Defs.' Mem. at 7. The Court agrees.

"HIPAA does not contain any express language conferring privacy rights upon a specific class of individuals. Instead, it focuses on regulating persons that have access to individually identifiable medical information and who conduct certain electronic health care transactions."

*Acara v. Banks*, 470 F.3d 569, 571 (5th Cir. 2006) (citing 42 U.S.C. § 1320d-1 (1996)). "Every district court that has considered this issue is in agreement that the statute does not support a private right of action." *Id*. (citing cases); *see also Brown v. Hill*, 174 F. Supp. 3d 66, 71 (D.D.C. 2016) (examining cases); *Hudes v. Aetna Life Ins. Co.*, 806 F. Supp. 2d 180, 195-96 (D.D.C. 2011), *aff'd*, 493 F.App'x 107 (D.C. Cir. 2012) ("In light of the statutory language of § 1320d-5 and the apparent consensus among the courts that have considered the question, this Court finds that Plaintiff has no private HIPAA right of action."); *Husain v. Smith*, No. 15-cv-708, 2016 WL 4435177, at *7 (D.D.C. Aug. 19, 2016) ("courts have consistently recognized [that HIPAA] provides no private right of action") (citing *Runkle v. Gonzales*, 391 F. Supp. 2d 210, 237 (D.D.C. 2005) (other citations omitted)). "Rather, an individual's 'only redress for an alleged HIPAA violation is to lodge a written complaint with the Secretary of Health and Human Services, through the Office for Civil Rights, which has the discretion to investigate the complaint and impose sanctions, both civil and criminal.'" *Brown*, 174 F. Supp. 3d at 71 (quoting *Johnson v. Kuehne & Nagel Inc.*, No. 11-cv-02317, 2012 WL 1022939, at *5 (W.D. Tenn. Mar. 26, 2012) (citing 45 C.F.R. § 160.306) (other citations omitted)). Accordingly, the plaintiff's HIPAA claim is dismissed under Rule 12(b)(6).

## IV. CONCLUSION

For the foregoing reasons, the defendants' Motion to Dismiss is granted, and the complaint is dismissed without prejudice. A separate order accompanies this Memorandum Opinion.

_____s/_____
Reggie B. Walton
DATE: March 29, 2018                United States District Judge